UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSEPH ENRIQUEZ,**<br><br>　　　**Plaintiff**<br><br>　　v.<br><br>**SIRIUS XM RADIO, INC., and DOES 1 through 10, inclusive,**<br><br>　　　**Defendants** | **CASE NO. 1:21-CV-1240 AWI BAK**<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 6, 8) |

This is a dispute between Plaintiff Joseph Enriquez ("Plaintiff") and Defendant Sirius XM Radio, Inc. ("SXM") regarding SXM's advertising, pricing, and discount/rebate policies. Enriquez seeks only declaratory and public injunctive relief against SXM under Cal. Civil Code § 1750 et seq. (the Consumers Legal Remedies Act ("CLRA")), Cal. Business & Professions Code § 17200 et seq. (the Unfair Competition Law ("UCL")), and Cal. Code of Civ. Procedure § 1060. This case was removed by SXM from the Kern County Superior Court on the basis of diversity jurisdiction. Currently before the Court is SXM's Rule 12(b)(6) motion to dismiss and Enriquez's motion to remand. For the reasons that follow, the Court will grant Enriquez's motion to remand and deny without prejudice SXM's motion to dismiss.

## **BACKGROUND**

From the Complaint, SXM provides a wide array of digital audio content on a subscription basis. SXM markets enticingly low promotional subscription rates to new customers, but with the caveat that once the promotional period ends, customers are automatically charged a significantly higher rate of service. The higher rates are at least double the promotional rates. In response to the significant rate increases, customers often contact SXM directly to complain, attempt to

1  downgrade their plan, or cancel their service outright.  Only after a customer takes this affirmative
2  step will SXM offer a "new" promotional package that will be similar to the original promotion
3  package.  However, customers have no reference for the "new" promotional rates when speaking
4  to SXM personnel because the rates are not advertised and are only offered if a customer threatens
5  to cancel or downgrade.  Instead, SXM advertises their promotional packages to "new" customers,
6  which strongly suggests that the promotion is a one time deal and that existing customers will
7  have no option but to pay the significantly higher rates or cancel their subscriptions.  Customers
8  who have figured out that there are hidden rates for existing customers must continue to contact
9  SXM upon the termination of each promotional period to again determine if another promotional
10 rate can be applied.  Customers have no way to determine the future cost of the SXM services
11 until after they contact SXM near the time that their subscription will end.  As an existing
12 subscriber, Enriquez has experienced price increases from SXM at the end of his promotional
13 period, and it was only after he threatened to cancel his subscriptions that SXM offered him a
14 significantly lower promotional package.
15         On July 1, 2021, Enriquez filed his Complaint against SXM in the Kern County Superior
16 Court.  Enriquez requests attorneys' fees and declaratory and public injunctive relief.  Enriquez
17 requests that SXM be required to:  (1) provide truthful advertising, (2) ensure all of their
18 advertisements and related statements and representation be truthful, complete, and not
19 misleading, (3) not issue secret and unearned discounts to select consumers, (4) train their
20 personnel not to misrepresent services and pricing and to provide consumers with truthful,
21 complete, and accurate information, and (5) ensure that customers are aware of any and all price
22 reductions and rebates that SXM may provide.
23         On August 16, 2021, Defendants removed the matter to this Court.  In their notice of
24 removal, SXM alleges that Enriquez is a citizen of California and it is a citizen of Delaware and
25 New York.  SXM also explains that the amount in controversy can be measured by the potential
26 cost to SXM for complying with the requested injunction.  SXM states that the cost to change its
27 promotional pricing policies, to communicate these changes to its employees and contractors, to
28 train customer service agents, and to otherwise implement the changes would cost more than

$75,000. Further, being prevented from offering temporary price promotions to its subscribers would result in a loss of subscribers that would far exceed $75,000. SXM explains that in 2020, it had 34.7 million subscribers in the U.S. Given a standard subscription costs $203.88 per year, it would take the loss of only 368 California subscribers to exceed $75,000 in lost revenue. Finally, SXM noted that, considering prevailing billing rates for attorneys of more than $500 per hour, and a complex civil case such as this in which at least 150 hours of attorney time could be expended, attorneys fees will likely exceed $75,000.

## I. MOTION TO REMAND

*Plaintiff's Argument*

Enriquez argues that his claims do not amount to more than $75,000 in controversy and that remand is mandatory.

SXM speculates about the costs of complying with an injunction would exceed $75,000.00, both in terms of internal costs and loss of subscriber revenue. However, SXM's guesswork does not meet its burden of establishing the amount in controversy. Moreover, SXM is relying on an improper method for evaluating the amount in controversy. The proper measure for evaluating the public injunctive relief sought is not by aggregating all claims for all consumers, nor is it to rely on SXM's viewpoint of the cost of compliance. Instead, because the claims are akin to a class action, the value of the injunctive relief is measured by the benefit to Enriquez himself, and cannot be aggregated with the value of the injunction to other consumers/members of the public. The value to Plaintiff of the injunction is about $15 per month. Even if Enriquez lived 100 years from today, the amount in controversy would only amount to $18,000.

With respect attorneys' fees, these fees are to be considered as part of the amount in controversy. However, SXM merely speculates that the amount in controversy from attorneys' fees would surpass $75,000 based on the generic billing rates of attorneys in a complex civil case. Moreover, SXM fails to consider that it can only use Enriquez's pro rata share of attorneys' fees for the amount in controversy. The CLRA and UCL claims for public injunctive relief are akin to class actions. There is no principled reason to treat attorneys' fees differently from the claims for

injunctive relief for purposes of the amount in controversy.  Permitting aggregation of attorneys' fees would defeat the prohibition against aggregating the claims.  Therefore, the attorneys' fees at issue are Enriquez's pro rata share of attorneys fees out of the millions of SXM's subscribers.  That amount would not be close to $75,000.

*Defendant's Opposition*

SXM argues that the value of an injunction is determined through the "either viewpoint rule." Under this rule, whichever party stands to gain or lose a greater amount is the viewpoint and amount that is considered for the amount in controversy.  Enriquez does not seriously dispute that complying with his requested injunction would greatly exceed $75,000.  Enriquez is attempting to prohibit SXM from offering discounts to dissatisfied customers under any circumstances.  For this to happen, new training for thousands of personnel at dozens of locations around the globe and would require modifying internal customer relations management systems, producing training materials, holding training session, and employing quality controls across its global service operation.  This would represent a major overhaul of SXM's service approach.  The requested injunction would also result in lost revenues and require SXM to change its marketing strategy.  The costs of compliance would easily exceed $75,000.

In terms of attorneys' fees, SXM is not conjuring up figures.  Enriquez's counsel has consistently sought rates higher than $500 per hour.  Enriquez's counsel has also sought fees for about 254 hours for work performed in connection with two motions to dismiss, irrespective of other aspects of a case.  Given the rates charged and the likely hours that would be involved, more than $75,000 in attorneys fees are in controversy.

SXM also argues that it is not aggregating claims.  This is not a class action, and the literal cost of complying with the injunction that Enriquez seeks for his own claims easily exceeds $75,000.00.  Moreover, the non-aggregation rule does not apply to cases like this that involve only a single plaintiff.  The Ninth Circuit has held in a UCL claim involving a single plaintiff that if the value of the thing to be accomplished exceeds the $75,000 threshold to any party, then jurisdiction is satisfied.  The Ninth Circuit has never announced an exception to the "either viewpoint rule" for single plaintiff UCL claims, even if the UCL claim is akin to a class action.

*Legal Standard*

The removal statute (28 U.S.C. § 1441) is strictly construed against removal jurisdiction. See Lake v. Ohana Military Cmtys., LLC, 14 F.4th 993, 1000 (9th Cir. 2021); Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010). It is presumed that a case lies outside the limited jurisdiction of the federal courts, and the burden of establishing the contrary rests upon the party asserting jurisdiction. Geographic Expeditions, 599 F.3d at 1106-07; Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009). "The strong presumption against removal jurisdiction" means that "the court resolves all ambiguity in favor of remand to state court." Hunter, 582 F.3d at 1042; Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see Lake, 14 F.4th at 1000. That is, federal jurisdiction over a removed case "must be rejected if there is any doubt as to the right of removal in the first instance." Geographic Expeditions, 599 F.3d at 1107; Gaus, 980 F.2d at 566. "If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); Gibson v. Chrysler Corp., 261 F.3d 927, 932 (9th Cir. 2001). Thus, remand under 28 U.S.C. § 1447(c) "is mandatory, not discretionary," Bruns v. NCUA, 122 F.3d 1251, 1257 (9th Cir. 1997), so district courts "must remand if [they] lacks jurisdiction." Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir. 2003).

Federal courts may exercise "diversity jurisdiction" when the amount in controversy exceeds $75,000 and the parties are "citizens of different States." 28 U.S.C. § 1332(a); Rainero v. Archon Corp., 844 F.3d 832, 839 (9th Cir. 2016). The amount in controversy is the amount at stake in the underlying litigation and can include *inter alia* damages (punitive, compensatory, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under a fee-shifting statute or contract. Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 793 (9th Cir. 2018). In actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. Corral v. Select Portfolio Serv'g, Inc., 878 F.3d 770, 775 (9th Cir. 2017); Chapman v. Deutsche Bank Nat'l Trust Co., 651 F.3d 1039, 1045 n.2 (9th Cir. 2011). Generally, the amount in controversy is assessed through the "either viewpoint rule," meaning that the amount in controversy in the case is the pecuniary result to either party which the

1 judgment would directly produce. Corral, 878 F.3d at 775: In re Ford Motor. Co./Citibank (S.
2 Dakota), N.A., 264 F.3d 952, 958 (9th Cir. 2001). The amount in controversy is generally
3 determined from the face of the pleadings. See Crum v. Circus Circus Enterprises, 231 F.3d 1129,
4 1131 (9th Cir. 2000). In a removed case, if the amount in controversy is not evident from the face
5 of the complaint, then the removing party must prove by a preponderance of the evidence that
6 more than $75,000 is actually in controversy. Corral, 878 F.3d at 774; Matheson v. Progressive
7 Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount
8 in controversy are insufficient." Corral, 878 F.3d at 774; Matheson, 319 F.3d at 1090-91.

9 *Discussion*

10 Enriquez seeks attorneys' fees, declaratory relief, and injunctive relief. No dollar figures
11 are listed in the Complaint, and no dollar figures are readily ascertainable from the Complaint. As
12 a result, it is SXM's burden to demonstrate by a preponderance of the evidence that more than
13 $75,000 is in controversy. To meet this burden, SXM has submitted evidence regarding its likely
14 costs of complying with the requested injunction and the likely amount of attorneys' fees. The
15 Court is not satisfied that SXM has met its burden.

16     1.    Cost of Injunction to SXM

17 Much of SXM's argument depends on valuing the injunction from its perspective, i.e. the
18 cost of complying with the injunction with respect to all consumers/customers. To be sure, the
19 general rule is that an injunction can be valued from either Enriquez's perspective or SXM's
20 perspective. As both sides recognize, however, there is an exception in class action lawsuits.

21 In a class action that is not governed by CAFA, the "either viewpoint rule" does not apply
22 (unless the class is uniting to enforce a single title or right in which they have a common and
23 undivided interest) and the amount in controversy is based on the benefit to each individual
24 plaintiff and not on the aggregate cost of compliance to the defendant as to all class members.
25 Kanter v. Warner-Lambert Co., 265 F.3d 853, 859 (9th Cir. 2001); In re Ford, 264 F.3d at 959;
26 Snow v. Ford Motor Co., 561 F.2d 787, 790-91 (9th Cir. 1977); Jack v. Ring, 553 F.Supp.3d 711,
27 716-18 (N.D. Cal. 2021); Beylerian v. Hillstone Rest. Grp., Inc., 2021 U.S. Dist. LEXIS 89904,
28 \*9-\*10 (C.D. Cal. May 10, 2021). This prohibition includes excluding a defendant's fixed

administrative costs of compliance from the amount in controversy.  See In re Ford, 264 F.3d at 960-61; Doe v. Aetna, Inc., 2018 U.S. Dist. LEXIS 57771, *18-*20 (N.D. Cal. Apr. 4, 2018).  The rationale behind this exception is based on the Supreme Court's prohibition in *Snyder v. Harris*, 394 U.S. 332 (1969) against class action plaintiffs aggregating the amounts of their separate and distinct clams to meet the amount in controversy.  See Kanter, 265 F.3d at 859; Snow, 561 F.2d at 790-91.  The "defendant's viewpoint approach" of examining the cost to the defendant of complying with an injunction as to the entire class would be the same as allowing the use of aggregation and thus, contrary to *Snyder*.  See Kanter, 265 F.3d at 859; Snow, 561 F.2d at 791.

    It is true that this is not a class action.  Nevertheless, Enriquez is only pursuing public injunctive relief under the UCL and CLRA.  That is, he seeks injunctive relief that will provide meaningful benefit primarily to California consumers and subscribers. See Capriole v. Uber Techs., Inc., 7 F.4th 854, 869 (9th Cir. 2021; McGill v. Citibank, N.A., 2 Cal.5th 945, 955 (2017); Maldonado v. Fast Auto Loans, Inc., 60 Cal.App.5th 710, 717 (2021).  Courts that have examined the issue generally find that because such UCL and CLRA claims seek relief on behalf of numerous individuals, the claims are sufficiently akin to class actions that the prohibition against aggregation and use of the "either viewpoint rule"/"defendant viewpoint rule" will apply.  See Doe, 2018 U.S. Dist. LEXIS 57771 at *12-*14; Hanan v. Ford Motor Co., 2003 U.S. Dist. LEXIS 14038, *4-*7 (N.D. Cal. Aug. 4, 2003); Ecker v. Ford Motor Co., 2002 U.S. Dist. LEXIS 26229, *10-*11 (C.D. Cal. Nov. 12, 2002); Boston Reed Co. v. Pitney Bowes, Inc., 2002 U.S. Dist. LEXIS 11683, *12-*16 (N.D. Cal. June 20, 2002); Surber v. Reliance Nat'l Indem. Co., 110 F.Supp.2d 1227, 1233 (N.D. Cal. 2000); Phipps v. Praxair, Inc., 1999 U.S. Dist. LEXIS 18745, *10-*18 (S.C. Cal. Nov. 12, 1999); but see Myers v. Merrill Lynch & Co., Inc., 1999 U.S. Dist. LEXIS 22642, *16 (N.D. Cal. Aug. 23, 1999); Mangini v. R.J. Reynolds Tobacco Co., 793 F.Supp. 925, 928 (N.D. Cal. 1992).[1]

    After consideration, the Court agrees with this majority approach.  As a result, if the rights

---

[1] The *Myers* court relied in part on *Mangini* in reaching its conclusions.  However, *Mangini* was authored by Judge Conti, who later disavowed *Mangini* and reached the opposite conclusion in *Boston Reed Co.*  See Doe, 2018 U.S. Dist. LEXIS 57771 at *13.

at issue are not single or unified, then the value of the injunction is based on the nature of the right asserted by Enriquez. See Snow, 561 F.2d at 790; Boston Reed Co., 2002 U.S. Dist. LEXIS 11683 at *17-*18. Further, SXM's fixed administrative costs for complying with the injunction cannot be considered for purposes of the amount in controversy. See In re Ford, 264 F.3d at 960-61; Doe, 2018 U.S. Dist. LEXIS 57771 at *18-*20.

Here, SXM does not argue that Enriquez and California consumers/subscribers have a single unified interest in its marketing and rebate practices. Although there is common conduct by SXM, Enriquez and each consumer or subscriber would be harmed individually. There is nothing before the Court that suggests that the rights at issue are anything other than individual "non-unified" rights. Therefore, the costs of the injunction to SXM cannot be aggregated and the administrative costs to SXM cannot be considered. See Kanter, 265 F.3d at 859; In re Ford, 264 F.3d at 960-61; Snow, 561 F.2d at 790-91; Doe, 2018 U.S. Dist. LEXIS 57771 at *18-*20; Doe, 2018 U.S. Dist. LEXIS 57771 at *16-*20; Hanan, 2003 U.S. Dist. LEXIS 14038 at *4-*7; Ecker, 2002 U.S. Dist. LEXIS 26229 at *10-*11; Boston Reed Co., 2002 U.S. Dist. LEXIS 11683 at *12-*16; Surber, 110 F.Supp.2d at 1233; Phipps, 1999 U.S. Dist. LEXIS 18745, *12-*13.

Without aggregation and without considering administrative costs, SXM must show that the value to Enriquez of receiving appropriate rebate information, paying a rebated rate, and not being subject to false statements regarding rebates would exceed $75,000. See Snow, 561 F.2d at 970-71; Boston Reed Co., 2002 U.S. Dist. LEXIS 11683 at *17-*18; Phipps, 1999 U.S. Dist. LEXIS 18745 at *12-*13. SXM has not done this. Instead, SXM focuses largely on the administrative costs that an injunction would have on its national business.[2] There is nothing that

---

[2] The Court notes that the evidence submitted by SXM appears to be from a global or national perspective. However, the injunctions requested are pursuant to California statutes. It would seem that any injunction that would issue pursuant to California law would only be binding on SXM for its conduct within California. That is, it is unclear why SXM would have to change its marketing and rebate practices in the remaining 49 states simply because California law might require specific conduct within California's borders. SXM presented no information regarding its California operations or the number of California subscribers or the cost of compliance in California for complying with the requested injunction. Further, although SXM indicates that it could lose revenue, there is no analysis as to how much revenue could reasonably be expected to be lost in California or elsewhere. There is only speculation that if about 400 subscriptions were lost, the jurisdictional minimum would be met. That is insufficient. Therefore, even if the Court did not adopt the rationale of cases like *Boston Reed Co.*, the Court would have doubts and not be satisfied that SXM had adequately established that it would incur $75,000 in compliance costs (no specific dollar amount would be ascertainable), lost revenues, or a combination thereof. Those doubts would be resolved against SXM. See Lake, 14 F.4th at 1000; Geographic Expeditions, 599 F.3d at 1107; Gaus, 980 F.2d at 566.

refutes the assertion that the value of the injunction to Enriquez would likely be about $15 per month. Enriquez is correct that it would be many years (that would likely exceed his lifespan) before he realized $75,000 worth of benefit from the requested injunction. Thus, SXM simply has not shown that the nature of the right being asserted has a value greater than $75,000 to Enriquez.

### 2. Attorneys' Fees

There is no dispute that attorneys' fees are available to Enriquez if he prevails in this case. However, for this UCL and CLRA case which seeks only public injunctive relief and does not vindicate a single unified right, attorneys' fees cannot be aggregated for purposes of the amount in controversy; rather, only Enriquez's pro rata share of the fees, i.e. his share of the fees of the California consumers/subscribers who would benefit from the public injunction, may be considered. See Doe, 2018 U.S. Dist. LEXIS 57771 at *22-*23; Boston Reed Co., 2002 U.S. Dist. LEXIS 1168 at *20; Phipps, 1999 U.S. Dist. LEXIS 18745 at *12-*13.

Here, SXM argues that, based on other fee applications, Enriquez's counsel would likely seek an hourly rate of $500 per hour, that it would take only 150 hours at this rate to reach $75,000, and that in a prior cases Enriquez's counsel attempted to bill over 250 hours for work on two motions to dismiss. However, among other concerns,[3] none of this evidence addresses Enriquez's pro rata share of any fees. Therefore, it is unknown what Enriquez's pro rata share of the attorneys' fees would be. Because the Court resolves all doubt and ambiguity concerning attorneys' fees against SXM, the pro rata share is less than $75,000 (and more likely than not, extremely less). See Lake, 14 F.4th at 1000; Geographic Expeditions, 599 F.3d at 1107; Gaus, 980 F.2d at 566.

### 3. Conclusion

It is SXM's burden to establish that more than $75,000 is in controversy in this UCL and CLRA suit for public injunctive relief. Geographic Expeditions, 599 F.3d at 1106-07. However,

---

[3] Even if the Court attributed all attorneys' fees to Enriquez, there would remain ambiguity. SXM provides no estimates regarding the number of hours that would likely be expended to resolve this case. SXM points out that Enriquez's counsel requested over 250 hours to defend two motion to dismiss in another case. However, this appears excessive. If Enriquez's counsel attempted to obtain anything close to 250 hours (or even half that amount) for filing this motion to remand or opposing SXM's motion to dismiss, the Court would drastically reduce such a request. Comparing the motions practice in an unrelated case to the motions practice in this case is not helpful.

SXM has not adequately demonstrated that the value of the injunction to Enriquez or Enriquez's pro rata share of attorneys' fees, either separately or together, total in excess of $75,000. The Court has doubts about the amount in controversy, and it resolves those doubts against SXM and against a finding of diversity jurisdiction. See Lake, 14 F.4th at 1000; Geographic Expeditions, 599 F.3d at 1107; Gaus, 980 F.2d at 566. Therefore, the Court concludes that it does not have diversity jurisdiction over this case and must remand.[4] See 28 U.S.C. § 1447(c); Kelton Arms, 346 F.3d at 1192; Bruns, 122 F.3d at 1257.

## II.   MOTION TO DISMISS

Because the Court will be remanding this matter to the Kern County Superior Court through 28 U.S.C. § 1447(c), it is inappropriate to rule on SXM's motion to dismiss. Therefore, the Court will deny SXM's motion to dismiss without prejudice to refiling in the Superior Court.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to remand (Doc. No. 8) is GRANTED;
2. Pursuant to 28 U.S.C. § 1447(c) and this Court's lack of subject matter jurisdiction, this case is REMANDED forthwith to the Kern County Superior Court; and
3. Defendant's motion to dismiss (Doc. No. 6) is DENIED without prejudice to refiling in the Kern County Superior Court.

IT IS SO ORDERED.

Dated:   September 30, 2022                               _____
                                                          SENIOR DISTRICT JUDGE

---

[4] 28 U.S.C. § 1447(c) permits a court to award attorneys' fees based on an improper removal. However, Enriquez did not request an award of attorneys' fees, and the Court does not find that SXM's removal was so unreasonable as to warrant a fee award. See Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008).